OPINION
{¶ 1} Rose Springer and Harold Grooms appeal from a judgment of the Clark County Court of Common Pleas, Juvenile Division, which granted permanent custody of their daughters, Kayla and Crystal, to the Clark County Department of Job and Family Services (CCDJFS). For the following reasons, we affirm the decision of the trial court.
 I {¶ 2} In July 2001, four children were removed from Springer's custody due to her failure to provide a safe, stable, and clean environment. All four children, none of whom were fathered by Grooms, were permanently placed with relatives. Soon after that, Springer and Grooms' first child was born, and he was immediately removed to the care of relatives, who have since gained legal custody of him. None of those five children are part of this appeal; we mention them as brief background information and to illustrate that an ongoing case plan was in existence for both Springer and Grooms.
 {¶ 3} When Kayla was born on July 26, 2001, Springer tested positive for marijuana. Kayla was removed from her parents' custody and was placed in the care of Springer's mother, Adella Springer. Both Springer and Grooms were living with Adella at that time.
 {¶ 4} CCDJFS developed a case plan that aimed at reunification of Kayla with her parents. The case plan required Springer and Grooms to: obtain and maintain clean, safe housing; obtain and maintain employment; attend parenting classes; have mental health/parenting assessments; be assessed for drug and alcohol abuse; and follow through with any treatment recommended as a result of the assessments.
 {¶ 5} In April 2002, a social worker visited the home to approve it for placement of a parent aide. The social worker found the home to be absolutely filthy, with a large amount of dirty laundry and clutter in every room. She could not get through parts of the house for the clutter. Gnats surrounded overflowing trash bags, and a full toilet was not flushed. Mouse droppings were found all over the kitchen, including in dishes and on food containers, and both new and old dog feces was seen in the carpets throughout the house. The entire house smelled horribly. The social worker called police, and Kayla was removed from the home and placed in foster care.
 {¶ 6} Crystal was born on May 22, 2003. She was immediately removed from the care of her parents due to their lack of progress in working on their case plan. CCDJFS developed a second, similar case plan in an attempt to reunify Crystal with her parents.
 {¶ 7} Following a one-day trial on July 7, 2003, the trial court granted permanent custody of both children to CCDJFS. Bother Springer and Grooms appeal that decision.
 II {¶ 8} In their first assignments of error, both Springer and Grooms claim that the trial court's decision to grant permanent custody of their daughters to CCDJFS was not supported by sufficient evidence. However, we disagree. The agency made a good faith effort to reunify the family. The record demonstrates clear and convincing evidence that the children could not be placed with either of their parents in a reasonable period and that they should not be placed with either of their parents. It also illustrates that granting permanent custody of Kayla and Crystal to CCDJFS was in the girls' best interest.
 {¶ 9} A trial court shall grant permanent custody of a child to the movant if the court determines that the child cannot be placed with either of her parents in a reasonable period of time or that he should not be placed with either of her parents, and if permanent custody is in the child's best interest. R.C. §§2151.414(B)(2) and 2151.414(E). A determination of the child's best interest must be based on clear and convincing evidence. R.C. § 2151.414(B). Clear and convincing evidence is proof that produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In rePieper Children (1993), 85 Ohio App.3d 318, 326,619 N.E.2d 1059, citations omitted. As a reviewing court, we must affirm the trial court's decision unless its determinations "`are not supported by sufficient evidence to meet the clear and convincing standard of proof.'" In re McCormick (Jan. 7, 2000), Clark App. Nos. 98 CA 47, 98 CA 48, citations omitted.
 {¶ 10} Springer had a history with CCDJFS of not complying with case plans. She failed to work with CCDJFS regarding the case plans for her first four children. Moreover, neither Springer nor Grooms complied with the case plan in regards to their son. Nevertheless, the agency tried to work with Springer and Grooms and made substantial, reasonable efforts to return Kayla and Crystal to their parents' care. However, the trial court found that neither Springer nor Grooms successfully completed any of the case plan objectives. Instead, they "continuously failed to substantially remedy the conditions causing the child[ren] to be placed outside the home and have demonstrated their lack of commitment toward the child[ren]." R.C. §§ 2151.414(E)(1) and 2151.414(E)(4).
 {¶ 11} There was concern about the parents' drug use. Springer tested positive for marijuana at Kayla's birth in July 2001. Springer refused to submit to a drug test in January 2003. Both parents tested positive for marijuana in March 2003, and Springer tested positive again in May 2003. At trial, Springer denied using drugs, and she claimed that her positive testing must have been because she was around others who were smoking marijuana when she was unaware of it. Although both parents obtained a drug and alcohol assessment, neither participated in the intensive outpatient treatment that was recommended.
 {¶ 12} Neither parent maintained any employment, nor did it appear that either made any effort to do so. In fact, both elected not to avail themselves of the job assistance that CCDJFS offered. As a result, they were unable to obtain or maintain a stable residence or to provide for the most basic needs of their children. After Kayla's removal from their care, Springer and Grooms lived in at least four different homes before again moving in with Adella by the time of trial. Springer made no financial contribution to the upkeep of the home, but Grooms may have earned a couple thousand dollars doing odd jobs around the neighborhood. It appeared that Grooms, Springer, and Adella were all living primarily on Adella's income of little more than $800 per month.
 {¶ 13} Furthermore, almost no child support was paid by either parent for the care of any of their children. Grooms admitted that despite his sporadic odd-job income, he did not begin paying child support until the month before the trial. Springer was approximately $21,000 in arrears and had even been incarcerated for nonpayment.
 {¶ 14} One of Springer's many excuses for lack of employment was that she learned in February 2003 that her hips were degenerating as a result of having seven children so close together in age. However, she offered no evidence in support of this claim. Another excuse was her lack of education, yet she chose to do absolutely nothing to rectify the situation. Although Springer signed up for GED classes, she never attended. Grooms has similarly failed to make any attempt to secure his GED as recommended.
 {¶ 15} There were grave concerns about the health hazards due to the unclean living conditions in which Springer and Grooms choose to live. The state of the home when Kayla was removed was horrendous, with not only clutter and dirt everywhere, but mouse droppings all over the kitchen and dog feces throughout the house. Additionally, the social worker noted that Grooms looked and smelled as though he had not bathed for several days. The record does not indicate what the state of the four interim homes was, but after Springer and Grooms moved into a new home with Adella, the house was kept no cleaner.
 {¶ 16} Despite explanations of the health risks and the assistance of parenting aides, Grooms, Springer, and Adella insisted that there was nothing wrong with allowing the dog to defecate and urinate inside the house because the children were not allowed in those areas. In fact, at trial Springer continued to deny that there was any concern about the cleanliness of her home. In February 2003, although the home was cleaner than it had been in the past, there was still dog feces on the floor. After that visit, Springer and Grooms would no longer allow social workers inside their home.
 {¶ 17} The parents made a minimal effort to attend some parenting classes, but they did not complete the course. Both did have psychological/parenting assessments, but they did not follow through with any of the recommended mental health counseling. There was also some concern that both parents had a history of criminal behavior. In fact, Grooms still owed money on a fine ordered by the juvenile court several years earlier.
 {¶ 18} Furthermore, the parents' visitation with the children was sporadic and irregular. Although Springer visited fairly regularly when Kayla was first removed, by the last several months before trial, she showed up for only nine of twenty-nine of the scheduled visits with her daughters. Both parents consistently failed to call and advise the agency of her decision not to visit.
 {¶ 19} Grooms' visitation was sporadic from the start, and he went to only one of the last twenty-nine scheduled visits. He claimed that he was too tired from all of his odd jobs to get out of bed for the morning visits. Moreover, Grooms almost never attended monthly team meetings to discuss the case plan, even after the schedule was changed to accommodate him. Neither parent chose to avail themselves of the agency's repeated offers to provide free transportation for them to and from visits.
 {¶ 20} In summary, the trial court found that both parents put far more effort into trying to excuse their own behavior than in trying to change it. The court agreed with the guardian ad litem's recommendation that permanent custody was in the children's best interest. For these reasons, we cannot find that the trial court erred in finding by clear and convincing evidence that the children could not be placed with either of their parents in a reasonable period of time and that they should not be placed with either of their parents. We also find that the record supports the trial court's finding that permanent custody was in the children's best interest. Springer and Groom's first assignment of error is without merit and is overruled.
 III {¶ 21} In her second assignment of error, Springer insists that CCDJFS failed to make reasonable efforts to place Kayla and Crystal with relatives. She concludes that permanent custody to CCDJFS was inappropriate.
 {¶ 22} Specifically, Springer insists that Grooms' mother, Karen Mowell, should have been considered for placement, despite the fact that Mowell had only a limited relationship with Kayla, and she had never even seen Crystal. After this case had been pending for nearly two years, Mowell did ask the social worker a couple of months before trial for paperwork to be considered for placement. However, Mowell never filed a motion with the court. Accordingly, the trial court was not authorized to consider Mowell for legal custody of the children. In re Perez (1999),135 Ohio App.3d 494, 496-97, 734 N.E.2d 858, citations omitted.
 {¶ 23} Furthermore, we have previously held that "courts do not have to first consider placing children with relatives before they may award permanent custody to a children services agency."In re Williams (Sept. 15, 2000), Montgomery App. No. 18217, citation omitted. A child's relationships with other relatives is but one factor for the court to consider when deciding whether permanent custody is in the child's best interest. R.C. §2151.414(D). It is not the only factor, nor is it a primary factor. Id.
 {¶ 24} Springer's second assignment of error fails.
 IV {¶ 25} In his second assignment of error, Grooms argues for the first time on appeal that he was denied the effective assistance of trial counsel because he was represented by the same attorney as was the children's mother. However, because Grooms failed to raise this issue in the trial court, he has waived his right to raise it here. In re Gulla (Nov. 22, 2000), Cuyahoga App. Nos. 76792 76793, citation omitted. This is not to say that if the trial court or counsel for the parties became aware of a possible conflict, inquiry should not be made nor remedial action taken if necessary.
 {¶ 26} Nevertheless, we point out that even if Grooms had properly preserved this issue for appeal, any error would have been harmless. Contrary to his assertion, the evidence did not focus on Springer, but on both parents. As detailed in response to the parties' first assignment of error, there was ample evidence of both parents' failure to make progress on the case plan to support the trial court's findings. Moreover, the record does not show that the trial attorney had any preference for one client over the other, nor were there any obvious conflicts in her representation of both parents.
 {¶ 27} Accordingly, Grooms' second assignment of error is without merit and is overruled.
 V {¶ 28} Having overruled all three of Springer and Grooms' assignments of error, the judgment of the trial court will be affirmed.
Fain, P.J. and Young, J., concur.